UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
:
TRAVEL WIZARD, :
:
                       Petitioner, :
: 06 Civ. 2074 (GEL)
     -v- :
: **OPINION AND ORDER**
CLIPPER CRUISE LINES, :
:
                       Respondent,        :
:
------------------------------------------------------------x

Steven Riker, Esq., New York, New York, for petitioner.

Matthew Marion, Marion Partners LLC, Rowayton, Connecticut, for respondent.

GERARD E. LYNCH, District Judge:

     Petitioner Travel Wizard, a travel agency based in California, moves to vacate an arbitral award granting damages for breach of contract to respondent Clipper Cruise Lines ("Clipper"), the owner of a cruise ship known as the Clipper Odyssey. Clipper, in turn, cross-moves to confirm the award and to vacate the stay of enforcement currently in place. Petitioner's motion will be denied, and respondent's cross-motion will be granted.

                                        **BACKGROUND**

     On June 12, 2001, Travel Wizard and Clipper entered into a charter party (i.e., a maritime contract) under which Travel Wizard agreed to lease 62 of the 64 cabins on the Clipper Odyssey for its travel customers. (Marion Aff. Ex. 3.) Travel Wizard planned to arrange a ten-day cruise to see a solar eclipse from the waters near Australia in November 2002.

At first, Travel Wizard received an encouraging response to its efforts to market the cruise. The terrorist attacks of September 11, 2001, however, sent a chill through the travel industry. Cancellations of cruises were particularly common. For months after September 11, not a single prospective passenger contracted with Travel Wizard for the eclipse cruise. (Marion Aff. Ex. 1 at 2.)

After the September 11 attacks, the parties three times agreed to delay the next payment due under the charter party. Each time, Travel Wizard failed to make the payment. On March 25, 2002, Clipper sent Travel Wizard a "notice of cancellation and withdrawal" purporting to cancel the charter party. Travel Wizard demanded arbitration. The parties continued negotiating for some time, but Clipper eventually decided to schedule a different itinerary for the Clipper Odyssey for the dates Travel Wizard had reserved. The alternate cruise took place in November and December of 2002 without an eclipse viewing. (Marion Aff. Ex. 1 at 3-4.)

Disagreeing over the amounts owed under the charter party, the parties presented their dispute to an arbitration panel, which on December 5, 2005, issued a unanimous award (Marion Aff. Ex. 1) (the "award") under which Clipper received $245,117.18 in unpaid charter hire and pre-award interest, as well as post-award interest at $6.75% commencing on January 1, 2006. The parties were required to bear their own costs and fees. (Id. at 9.)

On March 1, 2006, petitioner commenced an action by Order to Show Cause in New York State Supreme Court, seeking to vacate the award. The Supreme Court issued a temporary restraining order ("TRO") staying enforcement of the award, the accrual of post-award interest, and the payment of the arbitrators' fees by petitioner. (Marion Aff. Ex. 2.) On March 17, 2006, Clipper removed the action to federal court, where it filed its Answer and Counterclaim. The

matters now pending before this Court are Travel Wizard's motion to confirm the arbitration award and Clipper's cross-motion to confirm the award and to vacate the stay of enforcement currently in place pursuant to 28 U.S.C. § 1450.[1]

## DISCUSSION

Petitioner asks the Court to vacate the award primarily on two bases: first, that at least one of the arbitrators was or appeared to be biased in favor of respondent; and second, that the award was flawed on its merits.  Petitioner also argues as a threshold matter that respondent's opposition papers and cross-motion should be disregarded because they were not submitted in a timely manner.

### I.    Timeliness of Respondent's Opposition Papers and Cross Motion

Petitioner argues that respondent's opposition papers and cross-motion to confirm the arbitration award are untimely, and asks that they therefore be "rejected." (P. Mem. 4.)  This action was originally brought in New York County Supreme Court, where an Order to Show Cause was executed by the court requiring opposition papers to be served by March 17, 2006. (Riker Aff. Ex. 3.)  Respondent removed the case to federal court on March 16, 2006, and filed its answer on March 29, 2006.  Respondent's opposition papers and cross-motion were filed on August 16, 2006.  Petitioner argues, without citing authority, that "Respondent should have served its opposition/cross motion at the same time it served its Answer." (P. Mem. 4.)

---

[1] Petitioner asks the Court to disregard the respondent's opposition papers because they are "so replete with factual errors." (P. Mem. 5.)  Petitioner does not cite any legal authority suggesting that this is an appropriate basis to "disregard" submissions by counsel.  The request is denied.

3

A little less than a month after respondent's cross-motion was filed, the Second Circuit issued an opinion clarifying the filing obligations that follow the removal of a petition to vacate or confirm an arbitration award.  See D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 107-09 (2d Cir. 2006).  "Removed proceedings arrive in federal court in the procedural posture they had in state court."  Id. at 108.  Thus, when a motion or petition is removed before its return date, it arrives in federal court with its posture "unchanged: a motion with a return date."  Id.  Therefore, as in Blair, Clipper "should have responded in some fashion, *e.g.*, by seeking an extension, arguing the merits, raising jurisdictional or venue objections, etc."  Id.

The Second Circuit noted in Blair, however, that "given the prior dearth of caselaw on the treatment of removed petitions to confirm or vacate arbitration awards, the [respondents] are entitled to some slack."  Id.  The same is true here.  Moreover, even where one party altogether fails to respond to a motion to vacate or confirm an award, the Second Circuit held, district courts should assess the merits of the record rather than entering a default judgment.  Id. at 109-10.  This suggests that it would be inappropriate to penalize respondent in the dramatic manner suggested by petitioner, that is, by disregarding respondent's arguments.  Respondent's procedural mistake has not in any way undermined the Court's ability to assess the record.  Moreover, "[n]othing in . . . the Civil Rules of the Southern District requires a court to "punish a party for noncompliance."  Maggette v. Dalsheim, 709 F.2d 800, 802 (2d Cir. 1983).  In light of the dearth of caselaw concerning removal procedure in arbitration cases noted by the Second Circuit in D.H. Blair and the fact that respondent's mistake does not hinder the adjudication of the motions now before the Court, respondent's failure to request an extension of time to file its opposition papers and cross-motion will be excused.

**II.     Governing Law and Standards for Motions to Confirm or Vacate Arbitral Awards**

This case is governed by federal law. The charter party at issue provides that it "shall be construed under the general maritime law of the United States as supplemented by the law of the State of New York." (Marion Aff. Ex. 3 ¶ 7(a)). The charter also provides that any disputes shall be settled "in accordance with the rules of the Society of Maritime Arbitrators, Inc.," which in turn provide for arbitration "in accordance with these Rules and Title 9 of the United States Code." SMA Rules, Preamble, available at http://www.smany.org/sma/about6-1.html. Despite the plain language of the charter party, petitioner's memorandum argues that "the parties intended for New York law to apply." (P. Mem. 19.) Although the analysis below would be the same under New York law, the arbitration agreement clearly provides that federal law governs the agreement. Accordingly, federal law applies.

The Federal Arbitration Act (FAA) identifies several bases on which an arbitration award may be vacated, including "where there was evident partiality or corruption in the arbitrators." 9 U.S.C. § 10(a). In addition to the grounds for vacatur explicitly provided for by the FAA, an arbitral decision may be vacated when an arbitrator has exhibited a "manifest disregard of law." Westerbeke Corp. v. Daihatsu Motor Co., Ltd., 304 F.3d 200, 208 (2d Cir. 2002). If an award is not vacated, modified or otherwise corrected, it must be confirmed, provided the application to confirm is made within one year of the award. 9 U.S.C. § 9.

**III.    Petitioner Has Failed to Show Bias or Partiality**

A court may vacate an arbitration award "where there was evident partiality or corruption in the arbitrators, or either of them." 9 U.S.C. § 10(a)(2). The petitioner bears the burden of showing bias. Andros Compania Maritima, S.A. v. Marc Rich & Co., 579 F.2d 691, 700 (2d Cir.

1978). The Second Circuit has "not been quick to set aside the results of an arbitration because of an arbitrator's alleged failure to disclose information." Id. In this case, petitioner has offered no evidence suggesting bias or the appearance of bias.

Petitioner argues that some or all members of the panel failed to disclose a prior relationship with respondent's counsel. (P. Mem. 20-21.) The only evidence petitioner offers to support this allegation is a conversation between the arbitrators and respondent's counsel — at which petitioner's counsel was present — concerning the fact that respondent's counsel had represented "the Busch family in St. Louis" and procured good seats to a baseball game there. (Riker Aff. ¶ 18, Last Aff. ¶ 7.) The import of this allegation is not clear. Respondent's counsel states that, "At no point did [he] ever offer St. Louis Cardinals tickets or anything else to any of the panelists, nor [has he] ever attended a baseball game with any of them." (O'Keefe Aff. ¶ 26.) Petitioner nowhere indicates whether it wishes the Court to infer from its allegations that respondent's counsel offered baseball tickets to the panel, but in any event, nothing in the record suggests that the exchange was anything other than small talk.

Petitioner also complains that respondent's counsel had contact by phone with some of the arbitrators without petitioner's knowledge or consent. (P. Mem. 2.) Respondent states that the only ex parte contact that occurred was a single phone call, the sole purpose of which was to confirm a hearing date, and also states that the call was immediately disclosed by letter to petitioner's counsel. (Marion Aff. Ex. 4 (O'Keefe Reply Aff. ¶¶ 25-31.)) Petitioner offers no evidence to suggest otherwise; nor does it specifically identify any other contacts it believes occurred.

Petitioner's memorandum includes lengthy quotes from the hearing transcript, in which the purportedly biased arbitrator asks questions of counsel and witnesses. (P. Mem. 27-31.) In none of these passages does the arbitrator say anything indicative of bias, and petitioner does not explain what is suggestive of bias in these passages. Instead, petitioner alleges that petitioner's counsel "were all struck by the harsh tone and aggressive posture" of the arbitrator. (Riker Aff. ¶ 17.) The questions cited were all pertinent to the merits; to the extent they imply any opinion or view, there is nothing to suggest that such view was based on anything other than the merits of the case based on the arbitrator's analysis of the law and the evidence.

Petitioner complains that respondent's chosen arbitrator received more fees than the other arbitrators, but there is nothing suspicious about this. (P. Mem. 27.) The arbitrator in question was the author of the award, and thus presumably billed more time than his colleagues. Under the Rules of the SMA, each arbitrator determines his or her own fee. See SMA Rule 37, available at http://www.smany.org/sma/about6-1.html. Nor does petitioner explain how excessive or unevenly distributed fees would suggest that the arbitrators were biased against a particular party.[2] Petitioner also objects to the panel's requirement that the parties put funds in escrow as security against the payment of the panel's fees, but offers no reason to think this indicates bias. The SMA Rules explicitly permit such a requirement. Id.

Petitioner also complains that leading questions were allowed at the hearing. Even if this were in some way improper, which of course it is not, see SMA Rule 21 ("Rules of evidence used in judicial proceedings need not be applied"), petitioner never explains why permitting

---

[2] Petitioner also complains that the panel neither explained nor disclosed in advance its system for awarding fees to itself (P. Mem. 2), but points to no rule suggesting it was required to do so and again fails to explain why this would suggest bias.

leading questions suggests bias on the part of the arbitrators.  Nor does petitioner explain why the award of pre-and post-award interest, of which it also complains, constitutes evidence of bias.

Petitioner alleges that respondent's counsel had phone numbers for some of the arbitrators that had not been given to petitioner's counsel.  (Riker Aff. ¶ 19.)  Petitioner does not specify what phone numbers these were.  Respondent denies possessing any numbers for the panel other than those that appeared on the arbitrators' letterhead (O'Keefe Aff. ¶¶ 55-58), and petitioner offers no evidence casting doubt on that denial.

Finally, petitioner asserts that respondent was "permitted to dishonor agreements made between counsel during the arbitration," specifically an agreement concerning payment of court reporter fees.  Respondent denies that any such agreement was made.  (Marion Aff. Ex. 4 (O'Keefe Aff. ¶¶ 19-22.))  The award provides that stenographic fees are to be evenly divided.  (Marion Aff. Ex. 1 at 9.)  Petitioner offers no evidence that this decision was the result of bias, other than that it was less favorable than the outcome sought by petitioner's counsel.

In short, none of the evidence adduced by Travel Wizard suggests that any arbitrator was biased against it.

**IV.     The Merits of the Award**

Judicial review of the merits of arbitration awards is "severely limited," GMS Group, LLC v. Benderson, 326 F.3d 75, 81 (2d Cir. 2003), and vacatur is appropriate only where the movant can show "manifest disregard of the law." Id. at 77.  Under this standard, the party challenging the award bears the burden of proving that (1) the panel "knew of a governing legal principle yet refused to apply it or ignored it altogether," and that (2) the law ignored by the

panel was "well defined, explicit, and clearly applicable to the case." Halligan v. Piper Jaffray, Inc., 148 F.3d 197, 202 (2d Cir. 1998). Courts may not vacate an arbitration award merely "because of an arguable difference regarding the meaning or applicability of laws," Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker, 808 F.2d 930, 934 (2d Cir. 1986), since manifest disregard "means more than error or misunderstanding with respect to the law." Id. at 933.

Petitioner makes a variety of arguments addressed to the merits of the panel's decision, arguing that the award should be vacated because it is substantively flawed in several respects. (P. Mem. 34-53). All of its arguments, however, pertain to the weight of the evidence or to purported errors of law made by the panel. Because courts reviewing arbitration awards may not grant a motion to vacate merely on the basis of a legal error or a disagreement about the weight of the evidence, Wallace v. Buttar, 378 F.3d 182, 189-190 (2d Cir. 2004), and because petitioner never attempts to demonstrate that the arbitrators "knew of a governing legal principle yet refused to apply it or ignored it altogether," id. at 189, its arguments are without merit.

Petitioner's first argument is that the panel did not "give appropriate weight to the devastating impact that the events of September 11, 2001 had on the travel industry, and specifically, on Petitioner's ability to perform under the subject Charter Agreement." (P. Mem. 2; see id. at 34-40.) Specifically, it argues that the events of September 11 relieved it of its duty to perform under the force majeure clause in the charter party and under the common law doctrines of impracticability and impossibility. (Id.) In fact, the panel thoroughly addressed these arguments. (See Marion Aff. Ex. 1 at 5-8.)[3] Even if petitioner were correct that the panel

---

[3] The panel noted that under the agreement, the force majeure clause apparently applied only to excuse Clipper's failure to perform (Marion Aff. Ex. 1 at 6), but ruled that even if the clause did apply to a breach by Travel Wizard, the clause would not excuse payment where

had made errors of law, this would not be a basis on which to overturn an arbitration award, because petitioner has offered no evidence that the panel chose to disregard any relevant legal principles.

Second, petitioner argues that the panel "failed to give appropriate weight" to the fact that petitioner was unrepresented by counsel when it entered the agreement. (P. Mem. 47.) It is not the task of a reviewing court to re-weigh the evidence, and again the award shows no disregard of any law on this point. Similarly, petitioner states that the award "is internally inconsistent, contradictory, and vague" concerning a modification of the agreement under which petitioner feels its performance was excused. (Id. at 41.) But "[i]nternal inconsistencies in the [arbitrator's] opinion are not grounds to vacate the award notwithstanding the [movant's] plausible argument that the arbitrator's decision was misguided." St. Mary Home, Inc. v. Service Employees Int'l Union, Dist. 1199, 116 F.3d 41, 44-45 (2d Cir. 1997).[4]

Third, petitioner argues that the panel "selectively enforced" portions of the agreement, specifically failing to rule on the enforceability of the agreement's liquidated damages provision. (P. Mem. 45.) In fact, the panel held that the clause was not relevant to the dispute, because Clipper had not based its claim on the liquidated damages clause. (Marion Aff. Ex. 1 at 8.)

---

performance has merely become economically inadvisable, even if the economic conditions were the result of a force majeure event. (Id., citing OWBR LLC v. Clear Channel Commc'ns, 266 F. Supp. 2d 1214, 1223-24 (D. Haw. 2003).) It further noted that the doctrine of impossibility could not excuse Travel Wizard's breach, because performance was clearly possible, even if not profitable after the September 11th attacks. (Id. at 7.)

[4] Even if the award were reviewed on the merits, it would be eminently sustainable. The panel found that although Clipper agreed to extend the deadline for a payment due after September 11th, there was no modification of the agreement that would excuse Travel Wizard's breach. (Marion Aff. Ex. 1 at 7.)

Fourth, petitioner contends that the panel overlooked the California Sellers of Travel Act, Cal. Bus. & Prof. Code §§ 17550.13, 17550.14, which requires sellers of travel services to provide refunds in certain circumstances. It argues that the Sellers of Travel Act required both petitioner and respondent to refund certain monies received as advance payments by passengers. (P. Mem. 48-49.) It is not clear whether petitioner intends to argue that Clipper owes money *to it* pursuant to this statute — a dubious contention in light of the charter party's clear provision for the application of federal law, supplemented by the law of New York — or, alternatively, that the amounts Travel Wizard was required to refund to its clients under California law constitute additional damages for which Travel Wizard deserves restitution. Both arguments are without merit. As the panel noted, the Sellers of Travel Act exempts ocean carriers, see Cal. Bus. & Prof. Code § 17550.1, which would render it inapplicable to Clipper's behavior even if the California statute applied. As to the possibility that the payments made by Travel Wizard pursuant to the California statute should be treated as damages payable to Travel Wizard, if Clipper never breached the contract, as the panel properly concluded, there can be no basis for awarding damages to Travel Wizard. Even if there were some error in the panel's reasoning on this issue — and none is apparent — there is no evidence in the record suggesting a conscious or manifest disregard of law.

Petitioner's fifth and final set of arguments concerns the panel's damages calculation. (P. Mem. 49-52.) Petitioner complains that the panel did not reduce damages to account for expenses avoided by respondent because the originally planned cruise would have had to go approximately 5,000 miles further than the alternate cruise, which would have cost more money. Petitioner in its filings with this Court and its filings with the arbitrators fails to identify any

11

evidence in the arbitral record demonstrating the alleged savings involved in the alternate cruise. Even if there were an error, it requires "more than a mistake of law or a clear error in fact finding" to disturb an award. Goldman v. Architectural Iron Co., 306 F.3d 1214, 1216 (2d Cir. 2002). Moreover, petitioner presented its argument concerning mitigation to the arbitrators without citing any legal authority explaining why those purportedly avoided expenses should be accounted for (Marion Aff. Ex. E ¶ 22 (Reply Aff. of Steven Riker); id. Ex. O, Sub-Ex. A, at 26-27 (Travel Wizard's Post-Arbitration Memorandum)); indeed, it cites none now. Even if the panel had made an error in the damages calculation method it adopted, manifest disregard of law implies a subjective disregard of a legal principle actually brought to the arbitrator's attention by the parties. Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 390 (2d Cir. 2003). Here, it cannot be said that the panel "knew of a governing legal principle yet refused to apply it or ignored it altogether." Halligan, 148 F.3d at 202. Accordingly, petitioner has offered no evidence of manifest disregard of law.[5]

In sum, petitioner's long list of grievances fails to show that the panel was aware of any relevant legal principle which it then chose to disregard. Petitioner has therefore not shown any basis on which the award should be vacated.

---

[5] Petitioner also argues that aspects of the respondent's damages calculation create a misleading picture of respondent's revenue from the alternate cruise, that respondent's evidence of damages was inadequate, that testimony concerning damages was inconsistent, and that more lucrative ways of mitigating damages were available to respondent. (P. Mem. 50-52.) It is not this Court's function to review the weight of the evidence, and none of these arguments suggest manifest disregard of law by the panel.

## CONCLUSION

For the foregoing reasons, petitioner's motion to vacate the award is denied, and respondent's cross-motion to confirm the award and to vacate the stay of enforcement (Doc. #8) is granted. Petitioner's application for a stay of the accrual of interest pending the determination of these motions (P. Mem. 33) is denied as moot.

SO ORDERED.

Dated: New York, New York
       January 3, 2007

*[signature]*

GERARD E. LYNCH
United States District Judge